**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

CHRIS FUSETTI,

    Plaintiff,

v.

PARAMOUNT EQUITY MORTGAGE, LLC, *doing business as* LOANPAL,

    Defendant.

**Case No.:** 1:18-cv-2879

## PLAINTIFF'S COMPLAINT

Plaintiff, CHRIS FUSETTI ("Plaintiff"), by and through his attorneys, Agruss Law Firm, LLC, alleges the following against Defendant, PARAMOUNT EQUITY MORTGAGE, LLC, *doing business as* LOANPAL ("Defendant"):

### INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, et seq. ("TCPA").

### JURISDICTION AND VENUE

2. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

3. This court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

4. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

### PARTIES

5. Plaintiff is a natural person residing in the City of Brighton, Adams County, State of Colorado.

6. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

7. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

8. Defendant is a California limited liability company based in the City of Roseville, Placer County, State of California.

9. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

10. Within four (4) years of Plaintiff filing this Complaint, in or around May 2017, Defendant began calling Plaintiff's cellular telephone at 303-921-5555, which included or introduced an advertisement or constituted telemarketing.

11. Within four (4) years of Plaintiff filing this Complaint, in or around May 2017, Defendant called Plaintiff's cellular telephone from, at least, 844-232-0501, which is one of the Defendant's telephone numbers.

12. Prior to calling Plaintiff's cellular telephone, Defendant knew the number was a cellular telephone number.

13. None of the calls Defendant made to Plaintiff were for an emergency purpose.

14. All of the calls Defendants made to Plaintiff's cellular telephone resulted in Plaintiff incurring a charge for incoming calls.

15. Plaintiff has never given to Defendant prior express written consent to contact Plaintiff as described herein.

16. Even if Plaintiff provided Defendant with his cellular telephone number, Defendant failed

to provide Plaintiff with clear and conspicuous disclosure that Defendant would contact Plaintiff with an automatic telephone dialing system ("ATDS").

17. Within four (4) years of Plaintiff filing this Complaint, Defendant used an ATDS to call Plaintiff's cellular telephone.

18. When Plaintiff answered Defendant's calls, he was sometimes greeted with "dead air" whereby no person was on the other end of the line. After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff attempting to solicit its products.

19. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

20. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

21. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

22. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

23. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

24. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

25. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple recipients.

26. The dead air that the Plaintiff may have experienced on the calls that he received is

indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

27. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express written consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

   a. Invading Plaintiff's privacy;
   b. Electronically intruding upon Plaintiff's seclusion;
   c. Intrusion into Plaintiff's use and enjoyment of his cellular telephone;
   d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of his cellular telephone; and
   e. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

**DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT**

28. Defendant's conduct violated the TCPA by:

   a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an

> automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, CHRIS FUSETTI, respectfully requests judgment be entered against Defendant, PARAMOUNT EQUITY MORTGAGE, LLC, *doing business as* LOANPAL for the following:

29. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

30. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

31. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

32. Any other relief that this Honorable Court deems appropriate.

DATED:  November 8, 2018

>   Respectfully submitted,
>   AGRUSS LAW FIRM, LLC
>
>   By: /s/ Michael S. Agruss
>   Michael S. Agruss, ARDC No. 6281600
>   4809 N. Ravenswood Avenue, Suite 419
>   Chicago, IL 60640
>   312-224-4695 – office
>   312-253-4451 – facsimile
>   michael@agrusslawfirm.com
>   Attorneys for Plaintiff